# EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

### COVER SHEET

| Plaintiff(s)<br><br>SNUG & MONK PROPERTIES, INC., a Pennsylvania Corporation, | CIVIL DIVISION |
|---|---|
| | **Case Number :**<br>GD - 20 - 1902 |
| | **Type of pleading :**<br>COMPLAINT IN CIVIL ACTION |
| | **Code and Classification :** |
| | **Filed on behalf of**<br><br>PLAINTIFF, SNUG & MONK PROPERTIES, INC., a Pennsylvania Corporation, |
| **Vs**<br>Defendant(s)<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY, | **(Name of the filing party)** |
| | ☑ Counsel of Record<br>☐ Individual, If Pro Se |
| | Name, Address and Telephone Number :<br><br>Lawrence P. Lutz, Esquire<br>Brian D. Farrington, Esquire<br>LUTZ PAWK & BLACK<br>101 East Diamond St., Ste. 102<br>Butler, PA 16001<br>724-285-3400 |
| | Attorney's State ID : 34606 **(Lutz)**<br>325641 (Farrington) |
| | Attorney's Firm ID |

FILED

PM 2: 5...

JAN 31

GD-20

31 January 2020
14:57:47
GD-20-001902

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

SNUG & MONK PROPERTIES, INC.,                     CIVIL ACTION
A Pennsylvania Corporation,

                                                   No. _____
                    Plaintiff,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

                    Defendant.

## NOTICE TO DEFEND

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the Complaint and this notice are served, by entering written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Lawyer Referral Service
Allegheny County Bar Association
920 City-County Building
414 Grant Street
Pittsburgh PA 15219
(412) 261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

SNUG & MONK PROPERTIES, INC.,
A Pennsylvania Corporation,

             Plaintiff,

v.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

             Defendant.

CIVIL ACTION

No. _____

## COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiff, Snug & Monk Properties, Inc., by and through its attorneys, LUTZ, PAWK, & BLACK, LAWRENCE P. LUTZ, ESQUIRE, and BRIAN D. FARRINGTON, ESQUIRE, and files the foregoing Complaint in Civil Action, and in support thereof, avers as follows:

### PARTIES, JURISDICTION, & VENUE

1.     The Plaintiff, Snug & Monk Properties, Inc. (hereafter "Snug & Monk"), is a Pennsylvania Corporation with its principle place of business located at 111 Crestwood Drive, Sarver, Butler County, Pennsylvania 16055.

2.     Defendant, First American Title Insurance Company (hereafter "First American") is a foreign corporation authorized to do business in the Commonwealth of Pennsylvania and having its principle place of business at 1 First American Way, Santa Ana, California 92707.

3.     At all pertinent times hereto, First American availed itself of the privileges of doing business in the Commonwealth of Pennsylvania and the County of Allegheny.

4.     First American, as part of its principle line of business, regularly issues title insurance policies for properties located in the Commonwealth of Pennsylvania and the County of Allegheny.

5.     The facts forming the basis of this matter took place in Allegheny County, pertaining to the sale and insuring of real property in Fox Chapel Borough.

6.     Therefore, jurisdiction and venue are appropriately vested with the Court of Common Pleas of Allegheny County.

## FACTS

7.     In September of 2018, Snug & Monk became interested in purchasing the property located at 114 West Drive, Fox Chapel Borough, Allegheny County, Pennsylvania, 15215 (hereafter the "Property").

8.     In order to secure its investment and protect against adverse claims, encumbrances, and defects in the title to the Property, Snug & Monk retained the services of First American to perform a title search and issue a title insurance policy.

9.     On or about September 25, 2018, First American issued Snug & Monk Title Insurance Policy No. 5011442-0315526e (hereafter the "Policy") for the Property. A copy of this Title Insurance Policy is attached hereto, made a part hereof, and marked as Exhibit "A."

10.     Therein, the Policy required First American to insure Snug & Monk against any loss or damage sustained or incurred by Snug & Monk as a result of any defect, lien, or encumbrances on the title, unmarketable title, and by reason of no right of access to and from the Property. *See* Exhibit "A."

11.     In reliance upon the assurances within the Policy, Snug & Monk purchased the Property from seller, Vernon L. Gay, for Two Hundred and Twenty Thousand Dollars ($220,000.00).

12.     However, at the time Snug & Monk took ownership of the Property, a lawsuit had been filed against Vernon L. Gay at GD 13-20805 in the Allegheny County Court of Common Pleas (hereafter the "2013 Lawsuit"). A true and correct copy of the Complaint therein is attached hereto, made a part hereof, and marked as Exhibit "B."

13.     Snug & Monk had no knowledge of this pending action at the time of taking ownership, and was reliant on the knowledge, expertise, and skill of First American in ensuring that no lien, encumbrance, or action threatened its interest in the property.

14.     This lawsuit was not excluded by the terms of the Policy.

15.     In the 2013 Lawsuit, it was averred that Vernon L. Gay breached a contract providing for the maintenance of West Drive, a private road.

16.     West Drive constitutes the sole access to and from the Property.

17.     On or about April 29, 2014, an Affidavit of Service was filed with the Allegheny County Prothonotary establishing service over Vernon L. Gay.

18.     The 2013 Lawsuit threatens to impose obligations, liens, encumbrances, and other damages upon the owner of the Property, and the Property itself.

19.     As such, the Property was unmarketable at the time Snug & Monk acquired it in 2018.

20.     As the West Drive maintenance agreement runs with the land, any adverse outcome in the 2013 Lawsuit threatens to impose a lien or other encumbrance upon title to the Property.

21.     Snug & Monk has recently attempted to sell the Property to a third-party.

22.     However, upon conducting a title search of the Property, the 2013 Lawsuit was revealed and the third-party was unable to obtain a title insurance policy.

23.     In fact, First American conducted this title search for the potential purchaser and refused to issue a policy in light of the 2013 Lawsuit.

24.     Therefore, the third-party refused to proceed with their purchase of the Property.

25.     Snug & Monk advised First American of the 2013 Lawsuit and the failed sale of the Property by letter from undersigned counsel dated May 7, 2019. A true and correct copy of this letter is attached hereto, made a part hereof, and marked as Exhibit "C."

26.     By letter dated June 19, 2019, First American denied Snug & Monk's claim. A true and correct copy of this letter is attached hereto, made a part hereof, and marked as Exhibit "D."

## COUNT I – BREACH OF CONTRACT

27.     Paragraphs 1 through 26 are incorporated herein by reference.

28.     Snug & Monk has performed all duties under the Policy, specifically notifying First American of its claim and paying any premium due at the time of policy issuance.

29.     First American has failed to perform its duties under the Policy.

30.     Under the Policy, First American was to insure against the unmarketability of the Property, claims adverse to the title of the Property, and claims affecting the right of access to the Property.

31.     At the time of closing the Property had defects which made it unmarketable, specifically, the existence of a civil action.

32.     Moreover, at the time of closing the 2013 Lawsuit threatened the status of the Property's title, and access thereof.

33.     First American breached its contractual duties under the Policy to Snug & Monk in the following particulars:

    a.  By failing to compensate Snug & Monk for the damages associated with the deficiency and unmarketability of title;

    b.  By failing to compensate Snug & Monk for the damages associated with the failure of the real estate transaction; and

    c.  By failing to defend Snug & Monk against the 2013 Lawsuit.

34.     Snug & Monk would not have proceeded to closing on the Property if it had been aware of the defects and unmarketability of the title.

35.     First American has failed to cure, and refuses to cure, the aforesaid breach despite Snug & Monk's demands.

36.     As a direct result of First American's actions, Snug & Monk has suffered the following damages:

    a.  Damages associated with the failure of the aforementioned sale;

    b.  Damages associated with the title to the property being unmarketable;

    c.  Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

    d.  Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

    e.  Any and all losses which may yet be determined.

37.     But for First American's breach of contract, Snug & Monk would not have suffered the aforementioned damages.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in its favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

## COUNT TWO - NEGLIGENCE

38.    Paragraphs 1 through 37 are incorporated herein by reference.

39.    First American had a duty to conduct a thorough title search in order to ensure Snug

& Monk would receive marketable title to the Property, free and clear of any adverse claims which

threaten such title.

40.    First American breached its duty to Snug in Monk in the following particulars:

    a.  By failing to conduct a reasonable and diligent title search on the Property;

    b.  By failing to ensure that its agents and employees conducted complete and diligent title searches;

    c.  By failing to ensure at closing that title to the Property was free of liens or other encumbrances;

    d.  By failing to ensure at closing that no action or issue threatened access to and from the property; and

    e.  By failing to ensure at closing that title to the Property was marketable.

41.    The 2013 Lawsuit would have, and could have, been discovered upon a reasonable

and diligent search of public records prior to Snug & Monk's closing on the Property.

42.    As a direct and proximate result of First American's negligence, Snug & Monk has

suffered the following damages:

    a.  Damages associated with the failure of the aforementioned sale;

    b.  Damages associated with the title to the property being unmarketable;

    c.  Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

    d.  Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

    e.  Any and all losses which may yet be determined.

43.    But for First American's negligence, Smug & Monk would not have suffered the

aforementioned damages.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in its favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

## COUNT THREE – BREACH OF IMPLIED WARRANTY

44.     Paragraphs 1 through 43 are incorporated herein by reference.

45.     First American held itself out as a qualified expert in its field, experienced in matters involving title and disputes which can affect title.

46.     First American, by issuing a title insurance policy guaranteed at closing, title to the Property was marketable, and that no claims, liens, or other encumbrances of public record threatened the title or marketability thereof.

47.     Snug & Monk relied upon First American's expertise and assurance that title to the Property was marketable, and that no outstanding claims, liens, or other encumbrances to the Property's title existed in moving forward with the sale.

48.     At the time of closing, title to the Property was not marketable, and the 2013 Lawsuit threatened the status of the Property's title.

49.     First American failed to utilize the reasonable skill and diligence of an experienced title insurance company in similar situations.

50.     As a direct and proximate result of First American's breach, Snug & Monk has suffered the following damages:

   a.  Damages associated with the failure of the aforementioned sale;

   b.  Damages associated with the title to the property being unmarketable;

   c.  Anticipated costs and attorneys' fees associated with defending against the 2013 Lawsuit;

    d.   Losses associated with the decrease in value of the Property at a time when the general real estate market has seen a substantial increase in market value; and

    e.   Any and all losses which may yet be determined.

51.    First American has failed to cure, and refuses to cure, the aforesaid breach despite Snug & Monk's demands.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in its favor and against the Defendant in an amount in excess of the limit for compulsory arbitration in this jurisdiction, including compensatory and consequential damages, interest, costs, and such other relief as this Court deems proper.

Respectfully submitted,

LUTZ, PAWK, & BLACK

Lawrence P. Lutz, Esquire
PA I.D. #34606
Brian D. Farrington, Esquire
PA I.D. #325641

101 East Diamond Street, Suite 102
Butler, PA 16001
(724) 285-3400

Attorneys for Plaintiff

# EXHIBIT A

IIHCGST

 **First American Title™**

| | Owner's Policy of Title Insurance |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Owner's Policy** | POLICY NUMBER |
| | **5011442-0315526e** |

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
3. Unmarketable Title.
4. No right of access to and from the Land.

(Covered Risks Continued on Page 2)

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

*First American Title Insurance Company*

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

For Reference:

File #:  2018080026
Loan #:  SNUG-999-001-007

Issued By:

**Complete Mortgage Closing Solutions, LLC**
400 Penn Center Blvd., Suite 775
Pittsburgh, PA 15235

(This Policy is valid only when Schedules A and B are attached)

This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Policy #: 5011442-0315526e                                                                      COVERED RISKS (Continued)

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a)  the occupancy, use, or enjoyment of the Land;
    (b)  the character, dimensions, or location of any improvement erected on the Land;
    (c)  the subdivision of land; or
    (d)  environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  Title being vested other than as stated in Schedule A or being defective
    (a)  as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b)  because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i)   to be timely, or
        (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)   the occupancy, use, or enjoyment of the Land;
        (ii)  the character, dimensions, or location of any improvement erected on the Land;
        (iii) the subdivision of land; or
        (iv)  environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

---

Policy #: 5011442-0315526e

## CONDITIONS

**1. DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

    (i) The term "Insured" also includes

        (A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;

        (B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;

        (C) successors to an Insured by its conversion to another kind of Entity;

        (D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

            (1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

            (2) if the grantee wholly owns the named Insured,

            (3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or

            (4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

    (ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

**4. PROOF OF LOSS**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

**5. DEFENSE AND PROSECUTION OF ACTIONS**

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

Policy #: 5011442-0315526e

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or

governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay. Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and

Policy #: 5011442-0315526e

expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

10. **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

11. **LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

12. **PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

13. **RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions

CONDITIONS (Continued)

contained in those instruments that address subrogation rights.

14. **ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

15. **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

16. **SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

17. **CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located. Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a

Policy #:  5011442-0315526e

CONDITIONS (Continued)

state or federal court within the United States of America or its territories having appropriate jurisdiction.

18.  NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, CA 92707. Phone: 888-632-1642.**



## Owner's Policy of Title Insurance

ISSUED BY
**First American Title Insurance Company**

# Schedule A

POLICY NUMBER
**5011442-0315526e**

Name and Address of Title Insurance Company:
**FIRST AMERICAN TITLE INSURANCE COMPANY, 1 First American Way, Santa Ana, California 92707**

File No.: 2018080026

Address Reference:   114 West Drive
Pittsburgh, Pennsylvania 15238

Amount of Insurance:  $ 220,000.00

Date of Policy:   September 25, 2018

1.   Name of Insured:
Snug & Monk Properties Inc.

2.   The estate or interest in the Land that is insured by this policy is:
Fee Simple

3.   Title is vested in:
Snug & Monk Properties Inc.

4.   The Land referred to in this policy is described as follows:
SEE EXHIBIT A ATTACHED HERETO

By: _____
Complete Mortgage Closing Solutions, LLC

(This Schedule A valid only when Schedule B is attached)


*First American Title™*

## Owner's Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

## Schedule B

POLICY NUMBER

**5011442-0315526e**

File No.: 2018080026

### EXCEPTIONS FROM COVERAGE

This Policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

Mortgage from Snug & Monk Properties Inc. to ReCasa Financial Group, LLC, dated September 14, 2018, filed for record on September 25, 2018 in Allegheny County, Book 49785, Page 178, in the principal sum of $463,000.00.

1.  Rights or claims by parties in possession or under the terms of any unrecorded lease or agreement(s) of sale.

2.  Easements, or claims of easements, not shown by the Public Records.

3.  Any variation in location of lines or dimensions or other matters which an accurate survey would disclose.

4.  Possible tax increase based on additional assessments.

5.  Accuracy of area content not insured.

6.  Coal and mining rights and all rights related thereto.

    NOTICE: THIS DOCUMENT DOES NOT INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (See 52 P.S. 1551)

7.  Oil, gas or other mineral interests and all rights incident thereto now or previously conveyed, transferred, leased, excepted or reserved.

8.  Subject to all matters shown on the Plan as recorded in the Department of Real Estate Office of Allegheny County, Pennsylvania in Plan Book Volume 24, Pages 158 and 159 and Plan Book Volume 29, Page 148.

9.  Rights and privileges as set forth in Deed Book Volume 1382, Page 403 and Deed Book Volume 2631, Page 13.

10. Alley as set forth in Deed Book Volume 4989, Page 265.



| | Owner's Policy of Title Insurance |
| First American Title™ | ISSUED BY |
| | First American Title Insurance Company |
| Exhibit A | POLICY NUMBER |
| | 5011442-0315526e |

File No.: 2018080026

The Land referred to herein below is situated in the County of Allegheny, State of Pennsylvania, and is described as follows:

ALL THAT CERTAIN TRACT OR PIECE of ground situate in the Borough of Fox Chapel (formerly O'Hara Township), County of Allegheny and Commonwealth of Pennsylvania, being all of Lot Nos. 51 and 54 in a certain Plan of Lots laid out by the Aspinwall Delafield Co. Plan No. 4, recorded in the Department of Real Estate Office of Allegheny County in Plan Book Volume 24, Pages 158 and 159, bounded and described as follows:

BEGINNING at a point where the dividing line between Lots Nos. 50 and 51 intersects the center of Glendale Road; thence Northwardly along said dividing line, North 56° 13' West a distance of 295.40 feet to a point where the dividing line between Lots Nos. 50 and 54 intersects the center line of an unnamed alley, 10 feet wide, as shown on said plan; thence along the center line of said alley, South 4° 15' West a distance of 137.70 feet to a point in West Drive, as shown on said plan; thence Westwardly along the extension of the dividing line between Lots Nos. 51 and 54, South 70° 17' West a distance of 20 feet, more or less, to a point where a certain right of way, 10 feet wide, between Lots Nos. 51 and 52 and 53 intersects West Drive, as shown on said plan; thence Southwardly along said right of way, 10 feet wide, South 36° 15' East a distance of 317.95 feet to a point at or near the center of Glendale Road aforesaid; thence Northwardly along the center of said Glendale Road, North 20° 06' East, a distance of 251.71 feet to the dividing line between Lots Nos. 50 and 51 at the place of BEGINNING.

HAVING erected thereon a two-story frame and stucco dwelling and a stucco garage.

BLOCK AND LOT 170-J-179

BEING the same premises which George McF. Milligan and Elizabeth L. Milligan, his wife, by Deed dated 06/23/1971 and recorded 07/23/1971 in the Department of Real Estate Office of Allegheny County in Deed Book Volume 4989, Page 265, granted and conveyed unto Vernon L. Gay and Sonya L. Gay, husband and wife.

AND ALSO BEING the same premises which Sonya L. Gay, unmarried, by Deed dated 06/10/1998 and recorded 06/19/1998 in the Department of Real Estate Office of Allegheny County in Deed Book Volume 10226, Page 545, granted and conveyed unto Vernon L. Gay.



**Allegheny County
Jerry Tyskiewicz
Department of Real Estate
Pittsburgh, PA 15219**

60 2018 00029983

| | Instrument Number: 2018-29983 | BK-DE VL-17369 PG-398 |
|---|---|---|

**Recorded On:** September 25, 2018   **As-Deed**

**Parties:** GAY VERNON L

**To**   SNUG & MONK PROPERTIES INC                                      # of Pages: 4

**Comment:**

## *********** THIS IS NOT A BILL ***********

| Deed | 166.75 |
|---|---|
| | 0 |
| | 0 |
| **Total:** | 166.75 |

**Realty Transfer Stamp**

| Affidavit Attached-No | | Stamp Num-T59323 |
|---|---|---|
| FOX CHAPEL | | |
| Ward-99-NO WARD | | |
| | Value | 220,000.00 |
| Commonwealth of Pennsylvania | | 2,200.00 |
| Munic-Fox Chapel Boro | | 1,100.00 |
| School District-Fox Chapel | | 1,100.00 |
| Munic-Penalty | | 0.00 |
| Munic-Interest | | 0.00 |
| School-Penalty | | 0.00 |
| School-Interest | | 0.00 |
| | | 4,400.00 |

**Department of Real Estate Stamp**

Certified On/By-> 09-25-2018 / Belinda Gibbs

0170J00179000000

*I hereby certify that the within and foregoing was recorded in the Department of Real Estate in Allegheny County, PA*

## **DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT**

**File Information:**

Document Number: 2018-29983
Receipt Number: 3482218
Recorded Date/Time: September 25, 2018 04:06:57P
Book-Vol/Pg: BK-DE VL-17369 PG-398
User / Station: D Weber - Cash Station 22

**Record and Return To:**

CMCS
400 PENN CENTER BLVD
STE 755
PITTSBURGH PA 15235



*Jerry Tyke*

**Jerry Tyskiewicz, Director**
**Rich Fitzgerald, County Executive**

Tax Parcel Number:  170-J-179

# SPECIAL WARRANTY DEED

***THIS INDENTURE*** made the ___14___ day of _September_ 20 _18_ lawful

***BETWEEN*** Vernon L Gay, (hereinafter called the Grantor(s) party of the one part,
AND

Snug & Monk Properties Inc., (hereinafter called the Grantee(s), parties of the other part

***WITNESSETH*** that the said Grantor, for and in consideration of the sum of **$220,000.00** lawful money of the United States of America unto it well and truly paid by the said Grantee(s), at or before the sealing and delivery thereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee(s), their heirs and assigns,

ALL THAT CERTAIN TRACT OR PIECE of ground situate in the Borough of Fox Chapel (formerly O'Hara Township), County of Allegheny and Commonwealth of Pennsylvania, being all of Lots Nos. 51 and 54 in a certain Plan of Lots laid out by the Aspinwall Delafield Co. Plan No. 4, recorded in the Department of Real Estate Office of Allegheny County in Plan Book Volume 24, Pages 158 and 159, bounded and described as follows:

BEGINNING at a point where the dividing line between Lots Nos. 50 and 51 intersects the center of Glendale Road; thence Northwardly along said dividing line, North 56° 13' West a distance of 295.40 feet to a point where the dividing line between Lots Nos. 50 and 54 intersects the center line of an unnamed alley, 10 feet wide, as shown on said plan; thence along the center line of said alley, South 4° 15' West a distance of 137.70 feet to a point in West Drive, as shown on said plan; thence Westwardly along the extension of the dividing line between Lots Nos. 51 and 54, South 70° 17' West a distance of 20 feet, more or less, to a point where a certain right of way, 10 feet wide, between Lots Nos. 51 and 52 and 53 intersects West Drive, as shown on said plan; thence Southwardly along said right of way, 10 feet wide, South 36° 15' East a distance of 317.95 feet to a point at or near the center of Glendale Road aforesaid; thence Northwardly along the center of said Glendale Road, North 20° 06' East, a distance of 251.71 feet to the dividing line between Lots Nos. 50 and 51 at the place of BEGINNING.

HAVING erected thereon a two-story frame and stucco dwelling and a stucco garage.

BLOCK AND LOT 170-J-179

BEING the same premises which George McF. Milligan and Elizabeth L. Milligan, his wife, by Deed dated 06/23/1971 and recorded 07/23/1971 in the Department of Real Estate Office of Allegheny County in Deed Book Volume 4989, Page 265, granted and conveyed unto Vernon L. Gay and Sonya L. Gay, husband and wife.

AND ALSO BEING the same premises which Sonya L. Gay, unmarried, by Deed dated 06/10/1998 and recorded 06/19/1998 in the Department of Real Estate Office of Allegheny County in Deed Book Volume 10226, Page 545, granted and conveyed unto Vernon L. Gay.

***TOGETHER WITH*** all rights and privileges and ***UNDER AND SUBJECT*** to the covenants, easements, restrictions, reservations and conditions of record.

**TOGETHER WITH** all and singular the improvements, ways, streets, alleys, driveways, passages, waters, watercourses, rights, liberties, privileges, hereditaments appurtenances, whatsoever and hereby granted premises belonging, or in any way appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest property, claim and demand whatsoever of the said Grantor, as well at law as in equity, of, in and to the same.

**TO HAVE AND TO HOLD** the said lot or piece of ground described herein with the buildings and improvements thereon erected, the hereditaments and premises hereby granted or mentioned, and intended so to be, with the appurtenances, unto the said Grantees, their heirs and assigns, to and for the only proper use and behoof of the said Grantees, their heirs and assigns forever.

**AND** the said Grantor, its successors, or assigns do covenant, promise and agree, to and with the said Grantees, their heirs and assigns by these presents, that the Grantor, its successors and assigns, all and singular the hereditaments and premises hereby granted or mentioned and intended to be, with the appurtenances, unto the said Grantees, their heirs and assigns, against the said Grantor, its successors and assigns against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under them, or any of them, shall and will **WARRANT SPECIALLY** and forever **DEFEND.**

Notice- this document MAY NOT sell, convey, transfer, include or insure the Title to the coal and right of support underneath the surface land described or referred to herein, and the owner or owners of such coal HAVE the complete legal right to remove all of such coal, and, in that connection, damage may result to the surface of the land and any house, building or other structure on or in such land. The inclusion of this notice does not enlarge, restrict or modify any legal rights or estates otherwise created, transferred, excepted or reserved by this instrument.

**IN WITNESS WHEREOF**, the said party(ies) of the first part to these presents hereunder set their hand(s) and seal(s)

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF US:

_____ (Seal)

_Vernon L Gay_ (Seal)
Vernon L Gay

_____ (Seal)

_____ (Seal)

State of _Pennsylvania_

County of _Allegheny_

_____

_____

On this the ____ day of _September_, 20_18_, before me, a Notary Public, the undersigned **Vernon L Gay**, personally appeared, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained, and desired the same might be recorded as such.

**IN WITNESS THEREOF**, I have hereunto set my hand and official seal.

_Michelle L Sacco_
Notary Public
My Commission Expires: _April 19, 2020_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Michelle L. Sacco, Notary Public
Wilkins Twp., Allegheny County

NOTICE the undersigned, as evidence by the signature(s) to this notice and the acceptance and recording of this Deed, (is, are) fully cognizant of the fact that the undersigned may not be obtaining the right of protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This Notice is inserted herein to comply with the bituminous mine subsidence and land conservation act of 1966, as amended 1980, Oct. 10, P.L. 874, No. 156

*WITNESS OR ATTEST:*

_____                    _____ President
Witness                                     Claudine E. Rumbaugh, President

_____                    _____ member
Witness                                     Hugh C. Rumbaugh, member

### CERTIFICATE OF RESIDENCE

I do hereby certify that the Owner Mailing Address of the within named grantee/s is:
~~114 West Drive  Pittsburgh, PA  15238~~

Hughand Claudine Rumbaugh    III Crestwood Dr. Sarver, PA 16055

I do hereby certify that the Tax Billing Address of the within named grantee/s is:
ReCasa Financial Group, LLC 130 E. Chestnut St. Ste 200 Columbus, OH  43215

_____ President
Claudine E. Rumbaugh, President

_____ member
Hugh C. Rumbaugh, member

**Mail to:  CMCS**
**400 Penn Center Blvd., Suite 755**
**Pittsburgh, PA  15235**

# EXHIBIT B

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA**

SUSAN TUSICK,

      Plaintiff,

    v.

MARILYN EVERT, WALTER WADE MILLER,
ROWLAND E. MILLER and CAROL LYN
MILLER, husband and wife, JANE CIOCCA,
VERNON GAY, CHARLES W. MARCH and
JENNIFER N. MARCH, husband and wife,

      Defendants.

CIVIL DIVISION

No GD 13 - 20805

Code 011

COMPLAINT

Filed on behalf of Plaintiff:
Susan Tusick

Counsel of Record for this Party:
Richard T. Ernsberger, Esq.
Pa. I.D. 207064

BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222

(412) 391-2515

lidate Check
QPS4G1612629
11-04-2013  02:54:02
GD-13-020805

13 NOV -4 PM 2: 52

FILED

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

SUSAN TUSICK,                              )
                                           )        CIVIL DIVISION
              Plaintiff,                   )
        v.                                 )        No
                                           )
MARILYN EVERT, WALTER WADE MILLER,         )
ROWLAND E. MILLER and CAROL LYN            )
MILLER, husband and wife, JANE CIOCCA,     )
VERNON GAY, CHARLES W. MARCH and           )
JENNIFER N. MARCH, husband and wife,       )
                                           )
              Defendants.                  )

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

Lawyer Referral Service
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, Pa 15219
Telephone: 412. 261.5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN TUSICK, | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| v. | ) | No |
| | ) | |
| MARILYN EVERT, WALTER WADE MILLER, | ) | |
| ROWLAND E. MILLER and CAROL LYN | ) | |
| MILLER, husband and wife, JANE CIOCCA, | ) | |
| VERNON GAY, CHARLES W. MARCH and | ) | |
| JENNIFER N. MARCH, husband and wife, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

NOW COMES the Plaintiff, Susan Tusick, by and through her undersigned counsel, files this *Complaint for Breach of Contract* (the "Complaint"), and respectfully avers as follows for her Complaint against Defendants Marilyn Evert, Walter Wade Miller, Rowland E. Miller and Carollyn Miller, husband and wife, Jane Ciocca, Vernon Gay, Charles W. March and Jennifer N. March, husband and wife:

## PARTIES

1.    Plaintiff, Susan Tusick, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00218-0000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

2.    Defendant, Marilyn Evert, is the owner of real property situated in the Borough of

1

Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00263-000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

3.      Defendant, Jane Ciocca, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00085-000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

4.      Defendants, Walter Wade Miller, Rowland E. Miller and Carol Lyn Miller, are the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00179-0000-00 in the records of the Allegheny County Recorder of Deeds, Pennsylvania.

5.      Defendants, Charles W. March and Jennifer N. March, are the owners of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. 0170-J-00202-0000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

6.      Defendant, Vernon L. Gay, is the owner of real property situated in the Borough of Fox Chapel, County of Allegheny and the Commonwealth of Pennsylvania, known and described as Block and Lot No. of 0170-J-00179-0000-00 in the Allegheny County Recorder of Deeds, Pennsylvania.

## VENUE

7.      Venue is appropriate because Plaintiff, Susan Tusick's, cause of action arose in Allegheny County.

2

## APPLICABLE LAW

(A) <u>Breach of Contract</u>

8.    The necessary material facts that must be alleged for a breach of contract are: there was a contract, the Defendants breached the contract, and Plaintiff suffered damages.

(B)    Damages

9.    The purpose of damage award in a breach of contract action is to place the non-breaching party, as nearly as possible, in the same position it would have occupied had there been no breach.

(C) <u>Specific Performance</u>

10.    Specific performance is an equitable remedy allowing a court to compel performance of a contract where the contract contains an agreement between the parties as to the nature of the performance. To obtain specific performance, Plaintiff must show (1) a valid agreement; (2) that the agreement has been violated; and (3) that Plaintiff does not have an adequate remedy at law.

## STATEMENT OF FACTS

(a) <u>West Drive Is a Private Road, Maintenance Is to Be Provided by the Landowners Abutting the Road</u>.

(i) <u>The Parties Title Is Derived from the Aspinwall Delafield Company Plan of Lots.</u>

11.    The tract in which the above-described lots is located in a subdivision of lands containing a large number of lots and blocks, situated in the Borough of Fox Chapel, in the Aspinwall Delafield Company's Plan of Lots laid out by the Aspinwall Delafield Company recorded in the Recorder's Office of Allegheny County, Pennsylvania in Plan Book Volume 29, Page 148.

3

12.     The properties are located on the side of a steep hill, on a private road, known as West Drive, which provides the only means of ingress and egress to Plaintiff's and Defendants' properties.

13.     Running downhill from its intersection with Windsor Road, West Drive is bound on one side by a ravine and an exposed brick drainage ditch that abuts an upward sloping hillside on the other and West Drive continues in a shape similar to the letter S to West Drive's intersection with Rutledge Drive.

14.     At the border of West Drive and the ravine, trees, and bushes were planted over the years to protect against soil erosion on the ravine side.

(b) A Road Maintenance Agreement was signed in 1994 that required the parties and subsequent owners of the property to share in maintenance of the property.

15.     A homeowners agreement was signed on or about September 14, 1994 by Plaintiff, Susan Tusick, Defendants, Marilyn Evert, Jane Ciocca, Jane Ewing Miller, Vernon Gay and Sonja Gay, and Patrick Brooks and Sharon L. Brook to share the cost of maintenance and repair on West Drive and provides in its pertinent part as follows:

1.  If the private road requires any repairs or maintenance due to normal wear and tear, the parties hereto agree to share the cost of said maintenance and repair on the private road.

2.  If the private road requires any maintenance, repair or alterations due to any government ordinances or regulations, the parties hereto agree to share the cost of said maintenance and repair on said road.

3.  This agreement shall be a covenant running with the land, and shall be binding upon the parties, so long as they own the property and thereafter, shall be binding upon any subsequent owners of the property.

A tried and true copy of the West Drive Agreement that contains the covenants for repair to the road is attached as Exhibit 1 .

16.     It is believed and therefore averred that the subsequent owners of the property have

4

been provided notice of the at the West Drive Agreement from their predecessors in interest.

    (c) <u>West Drive has fallen into a state of disrepair that impedes access to the property and harms housing value.</u>

    17.    Subsequent to its last resurfacing, the private road known as West Drive has fallen into a state of disrepair and requires maintenance due to normal wear and tear and aging. To be specific, the following conditions have developed with the road:

    a.   the road has developed a series of pavement failures, potholes, and ruts due to the wear and tear and age from automobile, truck, and emergency personnel traffic A tried and true copy of photograph demonstrating the pavement holes is attached as <u>Exhibit</u> 2;

    b.   pieces of pavement can be picked up by hand out of the road surface A tried and true photograph the pavement demonstrating rocks and pavement pieces is attached as <u>Exhibit</u> 3;

    c.   at the intersection of West Drive and Windsor Road, the repeated resurfacing of the road has created a ridge that is higher on the Windsor Road side the diverts water into the adjacent valley and is causing significant soil erosion. <u>See</u> photograph the ridge in West Drive that demonstrates the ridge in the road the soil erosion hereinafter identified as Exhibit 4;

        i.     it is believed and therefore averred that the diverted water is causing soil erosion on the non-gutter side that could result in a landside in the future;

        ii.    the soil erosion at the top of the hill can be seen from the plants and vegetation sliding toward the ravine side of West Drive;

d.    the exposed brick gutter on West Drive has failed in several locations and due to previous pavement overlays there is a steep drop off from the road to the gutter;

e.    the exposed gutter on West Drive that runs the length of West Drive fills with road debris during storms, See photograph of the intersection of gutter that demonstrates the road debris herein after Exhibit 5 to Plaintiff's Complaint;

f.    the catch basin fills with debris and keeps water from entering the sewer system See photograph of catch basis that demonstrates the road debris herein after Exhibit 6 to Plaintiff's Complaint;

g.    storm water from the hillside and road is not being carried in the exposed gutter and resulted in pavement failure and water being channeled into neighboring properties;

h.    storm water that cannot be carried away in the gutter will freeze during winter conditions;

18.    Based upon the physical state of West Drive, deficiencies exist that endanger the public health, safety, and welfare, appellants Plaintiff, Defendants, and the general public face. To be specific, the following problems exist:

i.    increased wear and tear on their automobiles;

j.    tripping hazards for the general public walking West Drive;

k.    impeded access to the property by emergency personal, *i.e.* ambulances, police and fire;

l.    diminished home values because of the condition of the road;

m.    water that is being directed onto the road surface that would normally be carried away by the gutter is causing potentially hazardous ice to develop on the road;

6

n.  water that is being directed onto personal property that is causing the potential for

damage to downhill homes; and

o.  the estimated cost of repair is prohibitive for one homeowner to assume on behalf of

the properties abutting the road.

19.    Due to the road's state of disrepair, Plaintiff, Susan Tusick, provided additional

financial support and labor for the maintenance of the road beyond what is contemplated in the West

Drive Agreement.

p.  Plaintiff, Susan Tusick, placed Belgian blocks to fill in deteriorated pavement;

q.  Plaintiff, Susan Tusick, has paid for spot fills of potholes on the road;

r.  Plaintiff, Susan Tusick, has contacted the Borough of Fox Chapel to have the

intersection of West Drive and Windsor Road repaired;

s.  Plaintiff Susan Tusick has contacted the Borough of Fox Chapel to the storm drain

repaired through the placement of in ground storm drains and pipes; and

t.  Plaintiff Susan Tusick has hired labor to clean the gutter and catch basin in 2012.

(d) <u>Plaintiff, Susan Tusick, Has Repeatedly Requested Defendants Honor the West Drive
Agreement.</u>

20.    In reliance upon the West Drive Agreement, Plaintiff, Susan Tusick,  sent letters

dated August 7, 2010 to the Defendants requesting that meeting to discuss having the road repaired.

A tried and true copy of the August 7, 2010 that requests a meeting to discuss the repair of the road

is attached as Exhibit 7.

21.    On or about July 23, 2013, Plaintiff, Susan Tusick, sent a letter to Defendants stating

that she had received bids for the repair of the road. A tried and true copy of July 23, 2013 letter as

7

to the repair of the road Exhibit 8.

22.    Despite Plaintiff, Susan Tusick's, efforts to date, Defendants have failed act upon their obligations to repair and maintain the road under the West Drive Agreement.

(e) Plaintiff, Susan Tusick, Has Received Bids for the Repair of the Road and Retained an Engineering Firm to Provide an Expert Opinion on the Needed Repairs.

23.    In light of her concerns, Plaintiff, Susan Tusick, contacted contractors to receive bids and estimates for the repair and maintenance of the road.

24.    Plaintiff, Susan Tusick, received a bid from C&D Asphalt Paving for the cost of the road repair for $62,000.00; however, the bid does not include the cost of repair of the storm drain. A tried and true copy of the C&D Asphalt Bid is attached as Exhibit 9.

25.    C&D Asphalt Paving stated that it would perform the following work:

u.  mill and excavate roadway down to solid base;

v.  hall away the debris;

w.  install and compact sone and milling base as needed;

x.  repair and clean the drain as needed;

y.  install a 21/2 inch BCBC asphalt base and compact; and

z.  seal sides of roadway with AC;

26.    On or about July 24, 2013, Plaintiff, Susan Tusick, received a bid of $41,172.18 from Brant Paving Incorporated for the cost of road repair to West Drive; however, the bid does not include the cost of the repair to the storm drain. A tried and true copy of the Brant Paving Incorporated is attached as Exhibit 10.

(f) The Borough of Fox Chapel Sent a Letter Warning the Homeowners of Liability for the Dilapidated Condition of West Drive.

8

27.     On or about September 18, 2013, Plaintiff, Susan Tusick, and Defendants received a letter from the Borough of Fox Chapel, wherein the Borough of Fox Chapel, which warned the homeowners of personal liability of the condition of the road due to storm water management, and letter states:

> During heavy rainfall, and most recently two weeks ago, storm water from West Drive flooded downstream property owners along Rutledge and Valley Drives caused by the lack of maintenance of the drainage facilities along West Drive, a private road. Upon investigating complaints received from the downstream property owners, it became readily apparent that the storm drains along West Drive have not been cleaned out and debris removed for quite some time. Please be advised that all storm facilities must be periodically checked for debris in order to eliminate potential flooding and hazardous conditions for vehicles and pedestrians. Property owners will be liable for any injury or damage that may occur from water or debris left on private property and/or the public roadway.

See Letter dated September 18, 2013, where the Borough of Fox Chapel requests that the property owners along West Drive address the storm run off problems, hereinafter Exhibit 10 to Plaintiff's complaint.

(g)  Hampton Technical Associates, Inc. Assessment of the Conditions on West Drive Demonstrate Pavement Deterioration and Drainage Failures.

28.     On or about October 7, 2013, Plaintiff, Susan Tusick, received an opinion from Hampton Technical Associates engineering as to Hampton Technical Associates, Inc. assessments of the condition of the pavement and draining facilities of West Drive. A tried and true copy of the Hampton Technical Agreement that contains recommendations for repair to the road is attached as Exhibit 11.

29.     In its assessment of West Drive, Hampton Technical Associates, Inc. made the following findings:

4.1 Pavement Conditions

9

The majority of the pavement in West Drive is in a failing state. The entire road with the exception of the relatively new overlay area is covered with medium to high level cracking, pieces of pavement can be picked out of the road surface by hand many unfilled potholes, patches on patches, and bad dips and sags. Photographs 4-15 show several of the deteriorating areas of West Drive.

4.2 <u>Drainage Facilities Condition</u>

The brick gutter has failed or is filing in multiple locations along West Drive. See photographs 21-27. Due to previous payment overlays and patching in several locations steep drop offs have developed between the pavement and the brick gutter. See photographs 16-18. The shoulder of Windsor Drive east of its intersection with West Drive is highly eroded and washing material in to the gutter of West Drive. See photographs 19 & 20.

<u>See</u> Exhibit 11 at page 2.

30.    In its assessment of West Drive, Hampton Technical Associates, Inc. made the

following recommendations for repair:

5.1 <u>Pavement Restoration</u>

Full depth pavement replacement should occur where high level cracking, large potholes, and major pavement deterioration exist. Full depth pavement replacement requires removing the existing pavement and then reconstructed the roadway grade sub-base and pavement. Other areas may be overlaid with a new lawyer of pavement with the following exception. In area where a steep drop of exists or will existing between the gutter and roadway then existing pavement should be removed and replaced.

5.2 <u>Drainage Facilities Restoration</u>

The Borough of Fox Chapel should be approached to repair the shoulder of Windsor Drive at the intersection of West Drive. See photographs 19 7 20. Areas where the gutter is deteriorating or has failed should be repaired paving the gutter. The paved gutter should have proper gravel sub-base and pavement thickness. The gutter at the intersection of West Drive and Rutledge Drive should be reestablished by removing the debris and channel the runoff to the storm sewer in Rutledge Drive. If problem areas persist consideration should be given to removing the brick gutter and installing curb and inlets along West Drive.

<u>See</u> Exhibit 11 at page 3.

(h) <u>Defendants Actions Constitute a Breach of the West Drive Agreement.</u>

31.     Despite adequate notice of the conditions on West Drive, Defendants have failed to honor the West Drive Agreement.

32.     Unimpeded access to the road is necessary for police, fire, and ambulance access to Plaintiff's and Defendants' properties.

33.     Unimpeded access to the road is necessary for pedestrians that walk along West Drive and have the risk of falling on the rutted and dilapidated road.

34.     Defendants' continued refusal to make the necessary repairs to West Drive constitutes a breach of the West Drive Agreement.

35.     Defendants' have no lawful basis for refusing to honor their obligations under the West Drive Agreement.

36.     It is believed and therefore averred that some of Defendants have listed or are contemplating listing their houses for sale without contributing to the West Drive Agreement.

37.     It is believed and therefore averred that Defendant, Marilyn Evert, has entered into a contract for sale of her property.

38.     In sum, Defendants' compliance with the West Drive Agreement is essential to provide access to both Plaintiff's and Defendants' properties.

40.     Defendants have refused either to explore repairing the road or to present a viable alternative to the needed road repairs.

41.     By refusing to respond to Plaintiffs demands for road repair or present a viable alternative to the needed road repairs, Defendants have breached the West Drive Agreement.

42.     Plaintiff, Susan Tusick, after devoting time and money to personally pay for the road

11

repairs, has suffered damages from Defendants breach of the West Drive Agreement.

43.     The cost of repair to West Drive is prohibitive for Plaintiff Susan Tusick to undertake on her own.

44.     Moreover, without enforcement of the West Drive Agreement, Plaintiff Susan Tusick, has no remedy at law to repair the portions of the road located on neighboring properties.

45.     Accordingly, Plaintiff, Susan Tusick, seeks several forms of relief for money damages (where such damages can be quantified) and in the alternative specific performance - as appropriate to the violation of the West Drive Agreement.

WHEREFORE, Plaintiff, Susan Tusick, respectfully demands judgment against Defendants with attorney's fees, expert witness fees, interest, costs of the suit, and any other relief this Court deems just and proper.

Respectfully Submitted,

_Richard Ernsberger_
Richard T. Ernsberger, Esq.
Pa. I.D. 207064
BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222
(412) 391-2515

VERIFICATION

In accordance with this verification, I, Susan Tusick, hereby verify that the statements in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge and belief. This statement and verification is made subject to the penalties of the 18 Pa. C.S. 4904 relating to unsworn falsifications to authorities, which provides that I knowingly make false statements, I may be subject to criminal penalties.

Date  10 / 30 / 2013

Susan Tusick

### PRIVATE ROAD MAINTENANCE AGREEMENT

THIS AGREEMENT made this _17th_ day of _September_, 1994; by between and among:

| | |
|---|---|
| Marilyn Evert | 202 West Drive, Pittsburgh, PA 15215 |
| Jane Ciocca | 200 Rutledge Dr., Pittsburgh, PA 15215 |
| Jane Ewing Miller | 200 West Drive, Pittsburgh, PA 15215 |
| Thomas & Susan Tusick | 204 West Drive, Pittsburgh, PA 15215 |
| Brooks T. & Sharon L. Patrick | 112 West Drive, Pittsburgh, PA 15215 |
| Vernon Gay & Sonja Gay | Shady Lane, Pittsburgh, PA 15215 |



### WITNESSETH:

WHEREAS, the above named parties are the owners of real property along West Drive, a private road in Fox Chapel Borough, county of Allegheny Pennsylvania; and

WHEREAS, the above named owners desire to establish an agreement for the maintenance and repair of the said road; and

NOW, THEREFORE, in consideration of the above recitals and the covenants herein contained and intending to be legally bound, the parties hereto agree as follows:

1.  If the private road requires any repair or maintenance due to normal wear and tear, the parties hereto agree to share the cost of said maintenance and repair on the private road.

2.  If the private road requires any maintenance, repair or alteration due to any government ordinance or regulation, the parties hereto agree to share the cost of said maintenance and repair on said road.

3.  This agreement shall be a covenant running with the land, and shall be binding upon the parties, so long as they own the property and thereafter, shall be binding upon any subsequent owners of the property.

WITNESS our hands and seals as of the day and year first written.

WITNESS:

_Marilyn Evert_
Marilyn Evert

_Jane Ewing Miller_
Jane Ewing Miller

_Susan Tusick_
Susan Tusick

_Sharon L. Patrick_
Sharon L. Patrick

_Jane Ciocca_
Jane Ciocca

_Thomas Tusick_
Thomas Tusick

_Brooks T. Patrick_
Brooks T. Patrick

_Vernon Gay_
Vernon Gay

_____
Sonja l. Gay







EXHIBIT



EXHIBIT
5



EXHIBIT

6

# Mike and Susan (Tusick) Vetovich

21 Windsor Road
Pittsburgh, PA  15215
412-781-8896
stusick@tusickarchitects.com

August 7, 2010

Dear Neighbors;

I have some facts and information about West Drive:

1.  As you all know, West Drive has a sanitary line running under the road.    It is
    actually a combination line-storm/sanitary.

2.  The Federal Government has mandated that storm and sanitary be separated.
    The Borough is starting this process. It has started on Waldheim. (This is
    information from Chuck at the borough.  Can't remember his title, but he is
    in charge of road maintenance.)

3.   West Drive has five manhole covers and some water authority covers.

4.  The last major road resurfacing was when I was I high school
    and we are planning our 40th reunion; so, it was more than 40 years ago.

5.  Asphalt with age becomes hard, inflexible and breaks up.  Its movement
    breaks up the multiple layers of patch.

6.  The road has numerous patches which are breaking up due to age, weather
    and usage.

7.   Next July the borough plans to rebuild the brick shafts that lead up to the
    manhole covers.  The brick shafts are starting to deteriorate due to age.
    The borough will be cutting 8' x 8' holes in the road to do their work.

8.  At this time, the borough will raise or lower the manhole covers for free.
    I do not know if the water authority will raise or lower their cover for free
    They still need to be contacted.

9.  Asphalt with age becomes hard, inflexible and breaks up.  Its movement
    breaks up the multiple later of patch.

10. If you walk the road, you will notice that the slope of the road due to
    patching and resurfacing has changed the water flow from all the water
    being directed to the brick gutter to a portion of the water going the opposite
    direction.  This is deteriorating the non gutter side of the road and the
    hillside. If we do not address this situation, the road will eventually collapse.
    I do not know if you noticed, two years ago to stop the deterioration, we
    filled the water made rut with Belgium blocks.  Mike and I have never
    invoiced anyone for this expense which was over two thousand dollars.

11. Due to the age, micro burst and the heavy show, the road is breaking up.
    Recently, I began researching solutions.  That is how I found out about the
    borough's planned manhole shaft work.  It made no financial sense to



do major work on the road this year; so, I obtaining quotes to patch the major holes. The quotes came in over $2,700. John Boswell stopped by our house and stated that he had left over asphalt from patching Delafield Road. (one small truck load) We negotiated and he patched the road that day for $2,000.00 This solved the patching of the holes is a cost effective solution. *See attached invoice. I paid through my business, Tusick & Associates Architects, Inc., because it had the available funds. I need to Reimburse the business. It is $400 dollars per household. Please pay ASAP. Thank you.*

12. On the lower portion of the road, the brick gutter is in need of repair. This is because the gutters are not cleaned out. The homeowners in this portion of the road should address this issue.

13. Additionally, tree branches hanging lower over the road, bushes, vines and weeds are either hanging over the road too far, growing over the road or growing in the road.

14. The railroad ties on the road are missed aligned and some need to be replaced.

15. Property owners need to maintain the road or major maintenance concerns occur. This is where we are and still maintenance needs to be done. Gutters need to be cleaned out, branches need to be picked up, weeds and vines need to be removed. If you even did this once a month in the non winter months, our road would look fine. If you cannot personally, do the work, hire someone. It needs to be done. Accept your responsibility.

16. Due to the age, micro burst and the heavy show, the road is breaking up. Recently, I began researching solutions. That is how I found out about the borough's planned manhole shaft work. It made no financial sense to do major work on the road this year; so, I obtaining quotes to patch the major holes. The quotes came in over $2,700. John Boswell stopped by our house and stated that he had left over asphalt from patching Delafield Road. (one small truck load) We negotiated and he patched the road that day for $2,000.00 This solved the patching of the holes is a cost effective solution. *See attached invoice. I paid through my business because it had the available funds. I need t be reimbursed. It is $400 dollars per household. Please pay ASAP. Thank you.*

17. Also, we are talking to the Christie. They live at the top of the hill and their stone wall has been falling down for over five years. They dump their sump pump water and gutter water down their hillside to the road by way of a white PVC pipe. This caused their upper and lower stone wall to collapse. By not repairing their stone wall and leaving the stones in the gutter, the water was diverted onto the road causing damage. We are asking the Christie to address this issue and suggested they contact their homeowner insurance carrier. See attached letter.

18. I will keep you informed about the proposed road resurfacing next year. Please plan your finances so you have funds available. We will have a meeting when the different costs and options come in.

Thank you

## Mr. Michael Vetovich and Susan B. Tusick-Vetovich

21 Windsor Road
Pittsburgh, PA  15215
Tele: 412 – 781 - 8896

July 23, 2013

Dear Neighbors:

I believe that everyone received Marilyn Evert's letter dated November 29, 2012 concerning the condition of the road. (Enclosed is the letter). She states that the road needs to be repaired and I agree with her. The condition of the road is hurting the value of everybody's property.  It is one of the worst roads in Fox Chapel.  The first is lower West Drive.  Our road is the second worst road.

Because of this fact, I have contacted three companies to provide proposal for the milling and resurfacing of West Drive.  This work shall be done before the fall of 2013.  Every house should and shall pay it share.  Once this is done properly, the road shall be fine for many years and only require gutter cleaning and snow plowing.  I will inform you within the next few weeks what the bids and who will be awarded the bid. If you are interested, you can assist in obtaining bids, but they all must have the same scope of work and quality of work.

Finally, the following amount are still due.

| Family | 2012-2013 snow plowing | 2012 Road Repair |
|---|---|---|
| Vernon Gay | $ 224.00 | $ 666.67 |
| Marches | $ 224.00 | $ 666.67 |
| Marilyn Evert | $ 224.00 | $  66.67 |
| Wade Miller | $ 224.00 | -0- |
| Ciocca-Blank | $ 224.00 | $ 666.67 |
| Tusick-Vetovich | -0- | -0- |

Everyone was sent an invoice by certified mail May, 2013 and only Vernon Gay and Marilyn Evert picked up their invoices. This is your second request.  If I do not receive payment by August 1, I will be forced to go the magistrate.  Please make checks payable to Susan B. Tusick.  Thank you

Sincerely,
Susan Tusick



# Susan Tusick

# Valley Road

# C&D Asphalt

# Paving

### Description

- Mill and excavate roadway down to solid base ; haul away debris
- Excavate bad area for full depth repair
- Install stone and milling base as needed and compact
- Cut keyways at all driveways at beginning and end of roadways at catch basins
- Repair and clean drain as needed
- Install 2½ in. BCBC asphalt base and compact
- Install 1¾ in. I MOD and compact
- Seal sides of roadway with AC
- Seal all edges

**412-773-0094**

| Expenses | |
|---|---|
| ¼ Upon Acceptance and Mobilization | $15,500.00 |
| ¼ After Milling and Excavation | $15,500.00 |
| ¼ After Base is Installed | $15,500.00 |
| ¼ Upon completion | $15,500.00 |
| Total Expenses | **$62,000** |

**EXHIBIT**

9

If you have any questions
or concerns regarding this
estimate, contact:

Owner: John Donofrio

Phone: (412) 773-0094


**\*\*Please write out checks to John Donofrio\*\***

**DBA CD Asphalt**

Bid #1: Excavation and Milling

| Susan Tusick |
| Valley Road |

# C&D Asphalt

# Paving

412-773-0094

| Description |
| --- |
| ➢ Mill and excavate roadway down to solid base , haul away debris |
| ➢ Excavate bad area for full depth repair |
| ➢ Install stone and milling base as needed and compact |
| ➢ Cut keyways at all driveways at beginning and end of roadways at catch basins |
| ➢ Repair and clean drains as needed |
| ➢ Install 2½ in. BCBC asphalt base and compact |
| ➢ Install 1½ in. ID-2 MOD and compact |
| ➢ Seal sides of roadway with AC |
| ➢ Seal all edges |

If you have any questions or concerns regarding this estimate, contact:

**Owner: John Donofrio**

**Phone: (412) 773-0094**

| Expenses | |
| --- | --- |
| Upon Acceptance and Mobilization | $15,500.00 |
| ¼ After Milling and Excavation | $15,500.00 |
| ¼ After Base is Installed | $15,500.00 |
| ¼ Upon completion | $15,500.00 |
| Total Expenses | $62,000 |

**\*\*Please write out checks to John Donofrio\*\***

**DBA CD Asphalt**

# BRANDT PAVING INC.

———————— **Tops in Quality Since 1940** ————————

**Please sign and return to ......** 897 Perry Highway, Suite 100
Harmony, PA 16037
Phone:  724-368-9451
Fax:  .. 724-368-0176    Email: contact@brandtpaving.com

Proposal Submitted to:

Susan Tusick
21 Windsor Rd
Pittsburgh PA 15215

Address:

Phone: 412-781-8896

Date:
July 24, 2013
stusick@tusickarchitects.com

We hereby submit our proposal for:    **Roadway Repaving**

| ITEM | | APPROX. QUANTITY | UNIT COST | TOTAL |
|---|---|---|---|---|
| | **1120 SY** | | | |
| 1. | Mill existing asphalt roadway full depth in place. | | | |
| 2. | Fine grade millings to stabilize existing sub base. | | | |
| 3. | Haul any excess millings from site. | | | |
| 4. | Proof roll sub base for compaction. | | | |
| 5. | Pave with a 2 ½" compacted depth binder course and a 1 ½" compacted depth wearing course. | 1120sy | LS | $41,172.18 |
| | | | | |
| | **TERMS OF PAYMENT:**    30% Down...Balance Upon Completion | | | |

Due to present instability within the oil market; our costs are based upon the current Asphalt Cement Index per liquid ton. In the event of change to this index, our pricing will be adjusted accordingly without notice.

**EXHIBIT**
10

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986



# HAMPTON TECHNICAL ASSOCIATES, INC.

*Engineering Land Surveyors*

CORPORATE OFFICE
**35 Wilson Street – Suite 201**
**Pittsburgh, PA 15223**
Telephone #: (412) 781-9660
Fax #: (412) 781-5904
E-mail: ChrisS@hampton-tech.net
Web Site: www.hampton-tech.com



# West Drive
# Roadway Condition Assessment
## Job # 13-10986

### Prepared For
**Susan Tusick**
204 WEST DRIVE
PITTSBURGH, PA 15215

### Location
FOX CHAPEL BOROUGH
ALLEGHENY COUNTY, PENNSYLVANIA

### Date Prepared
October 7, 2013





EXHIBIT

11

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## Table of Contents

| DESCRIPTION | PAGE |
|---|---|

**1.0   INTRODUCTION**
1.1     Authority..........................................................................................................1
1.2     Objective...........................................................................................................1
1.3     Scope .................................................................................................................1

**2.0   ROADWAY EXPLORATION PROGRAM**
2.1     Site Inspection ..................................................................................................1

**3.0   GENERAL SITE CONDITIONS**
3.1     Project Location.................................................................................................2
3.2     Site Conditions ..................................................................................................2

**4.0   DISCUSSION AND EVALUATION OF SITE CONIDTIONS**
4.1     Pavement Condition ..........................................................................................2
4.2     Drainage Facilities Condition ...........................................................................2
4.3     Wall Condition ..................................................................................................3

**5.0   RECOMMENDATIONS**
5.1     Pavement Restoration ........................................................................................3
5.2     Drainage Facilities Restoration.........................................................................3
5.3     Wall Restoration ...............................................................................................3

**APPENDIX A**
Locations Map...............................................................................................................7

**APPENDIX B**
Photograph Location Key Map ....................................................................................11
Photographs.............................................................................................................13-42

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## 1.0   INTRODUCTION

### 1.1   Authority

This report has been prepared per the request of Ms. Susan Tusick on October 2, 2013.

### 1.2   Objective

The overall objective of this report is to assess the condition of the pavement and drainage facilities of West Drive. West Drive is a private drive connecting Rutledge Rive and Windsor Drive in Fox Chapel Borough Allegheny County.

### 1.3   Scope

In order to achieve the above objective, the investigation program consisted of the following

- Conduct field reconnaissance.

- Provide engineering involvement during all phases of the investigation and analysis of all data acquired.

- Prepare a roadway condition assessment that documents the data and analyses performed as well as present the discussion and evaluation of the roadway conditions and the conclusions regarding the roadway conditions, and a set of recommendations for remediation of the roadway

## 2.0   ROADWAY EXPLORATION PROGRAM

A visual inspection was conducted at the site on October 4, 2013 by Hampton Technical Associates, Inc. to determine the conditions of the pavement and drainage facilities of West Drive.

### 2.1   Site Inspection

The site inspection program consisted of visually inspected the site conditions and obtaining photographs of the aforementioned conditions.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

## 3.0   GENERAL SITE CONDITIONS

### 3.1   Project Location

West Drive is located between Windsor Drive and Rutledge Drive in Fox
Chapel Borough, Allegheny County.  West Drive is a private drive connecting
the aforementioned roadways and is maintained by the home owners along West
Drive.

### 3.2   Site Conditions

West Drive is a paved roadway with gutters.  The roadway is a mix of new
overlay, patches and deteriorating pavement.  The new pavement overlay is
located shortly after the entrance and continues for several hundred feet.  This is
shown on photographs 1-3.  The gutters are brick and on the high side of the
road a stone wall is integrated with the gutter in several locations.  The stone
walls are dry stacked field stones.  The walls range from 1 foot to several feet
along West Drive.  The walls act has retained walls on the high side of the
roadway.

## 4.0   DISCUSSION AND EVALUATION OF SITE CONDITIONS

This section of the report presents the general conditions of the roadway and
supporting facilities.

### 4.1   Pavement Condition

The majority of the pavement in West Drive is in a failing state.  The entire road
with the exception of the relatively new overlay area is covered with medium to
high level cracking, pieces of pavement can be picked out of road surface by
hand, many unfilled potholes, patches on patches, and bad dips and sags.
Photographs 4-15 show several of the deteriorating areas of West Drive.

### 4.2   Drainage Facilities Condition

The brick gutter has failed or is failing in multiple locations along West Drive.
See photographs 21-27. Due to previous pavement overlays and patching in
several locations steep drop offs have developed between the pavement and the
brick gutter.  See photographs 16-18.  The shoulder of Windsor Drive east of its
intersection with West Drive is highly eroded and washing material in to the
gutter of West Drive.  See photographs 19 & 20.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

4.3  <u>Wall Condition</u>

The dry stacked field stone walls have collapsed in several locations and are
being pushed by soil creep.  See photographs 28-30.

## 5.0  <u>RECOMMENDATIONS</u>

The recommendations presented in this report are based on conditions disclosed by
the site reconnaissance.  With this in mind, the following recommendations are
presented for pavement, wall, and gutter restoration.

5.1  <u>Pavement Restoration</u>

Full depth pavement replacement should occur where high level cracking, large
potholes, and major pavement deterioration exist.  Full depth pavement
replacement requires removing the existing pavement and then reconstructed the
roadway gravel sub-base and pavement.  Other areas may be overlaid with a
new layer of pavement with the following exception.  In areas were a steep drop
of exists or will existing between the gutter and roadway the existing pavement
should be removed and replaced.

5.2  <u>Drainage Facilities Restoration</u>

The Borough of Fox Chapel should be approached about repaired the shoulder
of Windsor Drive at the intersection of West Drive.  See photographs 19 & 20.
Areas where the gutter is deteriorating or has failed should be repaired by
paving the gutter.  The paved gutter should have the proper gravel sub-base and
pavement thickness.  The gutter at the intersection of West Drive and Rutledge
Drive should be reestablished by removing the debris and channel the runoff to
the storm sewer in Rutledge Drive. If problem areas persist consideration should
be given to removing the brick gutter and installing curb and inlets along West
Drive.

5.3  <u>Wall Restoration</u>

The ultimate solution would involve replacing the dry stacked field stone walls
with an engineered wall system.  This option would likely be cost prohibitive.
If funding is not available for wall replacement then spot repairs at the locations
of wall failure should be completed.

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

# Appendix A – Location Map

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986



**Scale: NTS**
**FIGURE 1**
**U.S.G.S. SITE LOCATION MAP**
**PITTSBURGH EAST, PA QUADRANGLES**

 **HAMPTON TECHNICAL ASSOCIATES, INC.** 
*Engineering Land Surveyors*
**CORPORATE OFFICE**
**35 Wilson Street – Suite 201**
**Pittsburgh, PA  15223**

Page 7 of 16

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986

**Appendix B – Photograph Location Key Map & Photographs**

Susan Tusick
204 West Drive
Fox Chapel Borough, Allegheny County
Project No. 13-10986



**Scale: NTS**

**FIGURE 2**
**PHOTOGRAPH LOCATION KEY MAP**

 **HAMPTON TECHNICAL ASSOCIATES, INC.**
*Engineering Land Surveyors*
**CORPORATE OFFICE**
**35 Wilson Street – Suite 201**
**Pittsburgh, PA  15223** 

























































## CERTIFICATE OF SERVICE

I, Richard T. Ernsberger, Esquire do hereby certify that a true and correct copy of the

foregoing Complaint was served upon the following parties by Sheriff Service on or about the

___4___ day of November, 2013, as follows:

Marilyn Evert
5825 5th Avenue, Apt. 204
Pittsburgh, PA 15232

Walter Wade Miller
200 West Drive
Pittsburgh, PA 15215

Roland Miller
1519 North Center Avenue
Somerset, PA 15501

Carol Lyn Miller
1519 North Center Avenue
Somerset, PA 15501

Jane Ciocca
908 Guyasuta Lane
Pittsburgh, PA 15215

Verona Gay
114 West Drive
Pittsburgh, PA 15215

Charles W. March
112 West Drive
Pittsburgh, PA 15215

Jennifer March
112 West Drive
Pittsburgh, Pa 15215

BEHREND & ERNSBERGER, P.C.

Richard T. Ernsberger, Esq.
Pa. I.D. 207064
BEHREND & ERNSBERGER, P.C.
The Park Building
Suite 1200
355 Fifth Avenue
Pittsburgh, PA 15222
(412) 391-2515

13

# EXHIBIT C

Law Offices

# LUTZ & PAWK

Lawrence P. Lutz
Michael J. Pawk

larrylutz@lutzandpawklaw.com
mikepawk@lutzandpawklaw.com

Rebecca L. Black
Brian D. Farrington

May 7, 2019

rebeccablack@lutzandpawklaw.com
bfarrington@lutzandpawklaw.com

First American Title Insurance Company
1 First American Way
Santa Ana, CA  92707

**ATTENTION:  Claims National Intake Center**

> **RE:**   **Policy No. 5011442-0315526e**
> **Insured: Snug & Monk Properties, Inc.**

To Whom It May Concern:

     Our firm represents Snug & Monk Properties, Inc., your insured under the above-referenced policy.  First American issued a title insurance policy dated September 25, 2018, a copy of which is enclosed (the "Policy").  The Policy insures title to property located at 114 West Drive, Fox Chapel Borough, Allegheny County, Pennsylvania, 15238 (the "Property").

     In reliance upon your Policy, Snug & Monk purchased the Property from Vernon L. Gay for $220,000.00 by Deed dated September 14, 2018.  Recently, the insured executed an Agreement of Sale to a third-party buyer who conducted a title search and advised of a lawsuit filed against the seller, Vernon L. Gay, at GD 13-20805 in the Court of Common Pleas of Allegheny County, Pennsylvania.  A copy of this is enclosed and the attachments thereto are attached.  This lawsuit pertains to the access road to and from the Property, and has prevented the sale to the third-party buyer.

     The Policy insures against any defect in or lien or encumbrances on the title, as well as any loss or damage sustained or incurred by the insured by reason of no right of access to and from the land.  The lawsuit in question was a public record and, as such, is not subject to any exceptions from coverage listed in your Policy.

     We would appreciate it if you would contact us to discuss these matters.

Yours sincerely,

LUTZ & PAWK

Lawrence P. Lutz

LPL/dlr

cc:   Snug & Monk Properties, Inc.

# EXHIBIT D



First American
Title Insurance Company
CLAIMS SERVICES

June 19, 2019

**_Sent Via U.S. Mail & Email_**

Lawrence P. Lutz, Esq.
Law Offices Lutz & Pawk
101 East Diamond Street, Suite 102
Butler, PA 16001
Email: larrylutz@lutzandpawklaw.com

| | |
|---|---|
| **Claim No.:** | PA-1909404179 |
| Policy: | 5011442-0315526E |
| Owner: | Snug & Monk Properties Inc |
| Property: | 114 WEST DRIVE |
| | PITTSBURGH PA 15238 |

Dear Mr. Lutz:

First American Title Insurance Company ("First American" or the "Company") is in receipt of the claim you submitted, informing the Company of an action filed by Susan Tusick ("Tusick") in the Court of Common Pleas of Allegheny County and docketed as Case No. GD 13-20805 ("Action"). Your claim asserts that the Action relates to the road, which provides access to the Property. For the reasons outlined herein, First American respectfully denies your claim.

Tusick filed a Complaint on November 4, 2013, naming the owners of several properties along West Drive as Defendants, including the prior owner of the Property and seller to the Insured, Vernon Gay. The Action seeks to enforce a private and unrecorded Private Road Maintenance Agreement ("Agreement") dated September 17, 1994. The Agreement, signed by Gay, required that all parties share the costs of maintaining West Drive, which provides the sole means of access to the Property. Tusick alleges that she paid for repairs to West Drive that the other owners did not contribute to and brought the three-count Complaint for (1) Breach of Contract; (2) Damages; and (3) Specific Performance. The Action, however, has not moved forward since it was filed and does not challenge access to the Property.

The Policy extends coverage to matters which fall under one of the enumerated Covered Risks subject to the Exceptions, Exclusions, and the Conditions and Stipulations outlined therein. Here, the ongoing Action fails to trigger coverage under any of the enumerated risks.

The Policy insured Title to the Property. Title is defined in the Policy as "the estate or interest described in Schedule A." Schedule A insured that the Insured owns the Property commonly known as 114 West Drive. The Action does not challenge the Insured's ownership of the Property. Rather, the Action seeks to enforce a private agreement related to a road not insured by the Policy. In addition, the Action does not challenge the use of West Drive for access to the Property. As a result, your claim does not trigger coverage and First American respectfully denies your claim.

Please note that the above is based upon the information presently available to the Company. It does not constitute, nor shall it be construed in any way, as a waiver of the terms and conditions of the policy nor of grounds for denial of the claim not set forth above.

If you are aware of facts or an interpretation of the policy which would alter the coverage determination, please provide that information to me in writing at your earliest convenience. Thank you for bringing this matter to our attention.

Very truly yours,

Elba Serrano-Torres, Esq.
Claims Counsel
Eserrano-torres@firstam.com
610-233-4152

## **VERIFICATION**

I, Hugh C. Rumbaugh, Vice President of Snug & Monk Properties, Inc., hereby verify that

the facts set forth in the foregoing Complaint in Civil Action at Law are true and correct to the best

of my knowledge, information, and belief.  I understand that any false statements made herein are

subject to the penalties of 18 P.S. §4904 relating to unsworn falsification to authorities.

Date: _1 - 8 - 2020_

Hugh C. Rumbaugh

## CERTIFICATE OF COMPLIANCE

Undersigned Counsel certifies that this filing complies with the provision of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Lawrence P. Lutz, Esquire
PA ID 34606
Attorney for Plaintiff
LUTZ PAWK & BLACK
The NexTier Center Building
Suite 102
101 E. Diamond Street
Butler, PA 16001
(724) 285-3400

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Allegheny _____ **County**

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | *TIME STAMP* |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

Lead Plaintiff's Name:
SNUG & MONK PROPERTIES, INC.

Lead Defendant's Name:
First American Title Insurance Company

**Are money damages requested?** ☒ Yes   ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Lawrence P. Lutz, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
- ☒ Other:
  BREACH OF CONTRACT

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*